District Court for Northern Carroll County
No. 2006-817

KARL KIESMAN

v.

STEPHEN MIDDLETON

Submitted: October 18, 2007
Opinion Issued: December 4, 2007

*Maurice D. Geiger*, of North Conway, by brief, for the defendant.

*Karl Kiesman, pro se*, filed no brief.

DUGGAN, J. The defendant, Stephen Middleton, appeals a final stalking order, *see* RSA 633:3-a, I(a) (2007), issued against him by the District Court for Northern Carroll County (*McKenna*, J.). We vacate and remand.

The trial court could have found the following facts. Middleton and the plaintiff, Karl Kiesman, play for competing teams in the Mount Washington Valley Dart League (MWVDL). Middleton's team, the Bullfrogs, and Kiesman's team, the Waste of Maine, play each other two or three times during each league season. This case arises from encounters the parties had at two of those matches.

In the spring of 2005, Middleton and Kiesman were randomly selected to play each other when their teams competed in a MWVDL match. After their game, the parties proceeded to shake hands and Middleton pulled Kiesman into him, "made a very loud sound," and sprayed saliva on Kiesman's face, sparking a quarrel. As the encounter escalated, Middleton invited Kiesman to hit him and announced to the crowd that he had a firearm in his vehicle. Kiesman believed that Middleton did in fact have a firearm on him, because roughly seven years earlier Middleton had brought a small firearm to a MWVDL banquet.

The parties had no further contact until approximately one year later when, on March 1, 2006, they were again randomly selected to play each other in a dart match. During that game, one of Middleton's teammates was yelling loudly in Kiesman's ear while cheering for his team. Kiesman requested that the teammate move away or refrain from yelling entirely. Believing that Kiesman had overreacted, Middleton became upset and taunted Kiesman throughout the remainder of their match.

Following the completion of their game, Kiesman refused to shake Middleton's hand because he believed that Middleton was acting in an unsportsmanlike manner. Middleton responded by calling Kiesman a "sore loser" and various other epithets. This verbal barrage continued until, finally, Middleton's captain asked Middleton to leave.

Middleton subsequently reported Kiesman to the league board for breaching a MWVDL bylaw that mandates that all league participants shake hands with their competitors upon completion of a match. After conducting a hearing, the board reprimanded Kiesman for his conduct. However, the board also reprimanded Middleton and barred him from coming into contact with Kiesman for the remainder of the season.

On March 16, 2006, Kiesman filed a petition with the trial court for a protective order against Middleton, asserting that Middleton had been stalking him. On April 13, after a hearing, the trial court issued a final stalking order on a standardized form that did not indicate the basis for its decision to grant the order. Middleton moved for reconsideration, arguing, among other things, that the stalking order should be vacated because "the court's decision [was] presented via a Check List Form ... [and] provide[d] no details as to the basis for the finding." On October 1, 2006, the trial court denied the motion.

On appeal, Middleton argues that: (1) the protective order must be vacated because the trial court failed to make specific findings in support of its grant of a final stalking order, as required by *Fisher v. Minichiello*, 155 N.H. 188, 193 (2007); (2) his conduct was necessary to accomplish a legitimate purpose independent of making contact with Kiesman and, therefore, he was not engaging in a course of conduct as required by RSA 633:3-a, II(a); and (3) there is insufficient evidence to support the trial court's finding that he committed the offense of stalking. We need not address Middleton's latter two arguments, because we agree that the trial court erred by failing to make specific findings in support of its imposition of a final stalking order. *See Fisher*, 155 N.H. at 193.

RSA 633:3-a, I, defines the act of stalking to include three distinct categories of conduct, two of which are arguably relevant here: (1) where a person "[p]urposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his ... personal safety ... and the person is actually placed in such fear[,]" RSA 633:3-a, I(a); and (2) where a person "[p]urposely or knowingly engages in a course of conduct targeted at a specific individual, which the actor knows will place that individual in fear for his ... personal safety[,]" RSA 633:3-a, I(b). In both cases, the person must have engaged in a "course of conduct," which is further defined as "2 or more acts over a period of time, however short, which evidence[] a continuity of purpose." RSA 633:3-a, II(a).

We have held that "when issuing a stalking order in response to a *civil* petition filed pursuant to RSA 633:3-a, III-a, the trial court must make findings on the record that a defendant engaged in two or more specific acts over a period of time, however short, which evidences a continuity of purpose." *Fisher*, 155 N.H. at 193 (citation omitted). The trial court failed to make such findings in this case. The final stalking order, which was issued on a standardized form, gives no indication of the facts upon which the trial court relied in issuing the order, nor the reasoning. Both this court and the defendant are left to speculate as to the precise

nature of the trial court's findings. *Id.* This is precisely the scenario that we sought to prevent in *Fisher. Id.* We therefore vacate the final stalking order and remand. *See Fisher,* 155 N.H. at 193; *cf. Fillmore v. Fillmore,* 147 N.H. 283, 284 (2001) (vacating the issuance of a protective order under RSA chapter 173-B where the trial court failed to make specific findings as to the defendant's purportedly illegal conduct).

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.