Jaffrey-Peterborough District Court
No. 2010-476

JESSIE DESPRES

·v.

KEVIN HAMPSEY

Argued: April 13, 2011
Opinion Issued: September 20, 2011

*Sheldon, Davis, Wells & Hockensmith, P.C.*, of Keene (*James Romeyn Davis* on the memorandum of law and orally), for the plaintiff.

*Fernald, Taft, Falby & Little, P.A.*, of Peterborough (*Mark D. Fernald* on the brief and orally), for the defendant.

HICKS, J. The defendant, Kevin Hampsey, appeals a final stalking protective order, *see* RSA 633:3-a (2007), issued against him by the Jaffrey-Peterborough District Court (*Runyon*, J.). We affirm.

The trial court found, or the record supports, the following facts. The plaintiff, Jessie Despres, and her three children resided in an apartment for which the defendant's company is the property manager. She testified that the defendant frequently stopped by or walked into her apartment unexpectedly, and that he made sexual comments and advances toward her. She recounted a specific incident that occurred in March 2010, when she called the defendant because her basement had flooded. After checking the basement, the two went outside. The plaintiff testified that she was in her pajamas and felt uncomfortable, and that the defendant "made comments on how he wished he would have caught [her] in less clothes and then proceeded to kiss [her] in [her] right ear," slam his body into hers, and tell her he wanted to have sexual intercourse with her. She told the court that she felt threatened and intimidated by the defendant, and that her "kids are intimidated by the constant drive-by's, . . . which are . . . followed by either calls or him stopping in."

The trial court found:

> [The defendant's] behavior constituted a "course of conduct" under RSA 633:3-a, II, (a), (2) & (3) & (b), in that on two or more occasions when the defendant had no legitimate official purpose for doing so, he entered the plaintiff's apartment unannounced and without prior consent and confronted her there, when she was not dressed, with sexual remarks that would cause a reasonable person to fear for her safety; and further, that such unannounced entries would cause the plaintiff's minor children to fear that such intrusions by an unwelcome stranger could occur unexpectedly at any time.

On appeal, the defendant argues that the trial court erred in: (1) failing to make findings of two or more specific acts that constitute stalking; (2) making findings that are unsupported by the record; (3) failing to weigh the credibility of the witnesses; and (4) issuing a stalking order where "most of [the plaintiff's] allegations were too vague and non-specific for [him] to respond to."

This appeal raises issues of statutory interpretation and sufficiency of the evidence. "In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." *Fisher v. Minichiello*, 155 N.H. 188, 191 (2007).

We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. When the language of a statute is clear on its face, its meaning is not subject to modification. We will neither consider what the legislature might have said nor add words that it did not see fit to include.

*Walker v. Walker*, 158 N.H. 602, 605 (2009) (quotation omitted). With respect to sufficiency of the evidence claims, we review them "as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Fisher*, 155 N.H. at 190. "We view the evidence in the light most favorable to the plaintiff" and "accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." *Id.*

The statute at issue provides, in pertinent part:

I. A person commits the offense of stalking if such person:

(a) Purposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear;

. . . .

II. As used in this section:

(a) "Course of conduct" means 2 or more acts over a period of time, however short, which evidences a continuity of purpose. A course of conduct shall not include constitutionally protected activity, nor shall it include conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person. A course of conduct may include, but not be limited to, any of the following acts or a combination thereof:

. . . .

(2) Following, approaching, or confronting [the targeted] person, or a member of that person's immediate family.

(3) Appearing in close proximity to, or entering the person's residence, place of employment, school, or other place where the

person can be found, or the residence, place of employment or school of a member of that person's immediate family.

RSA 633:3-a.

The defendant first contends that "the trial court made a general finding that 'on two or more occasions when the defendant had no legitimate official purpose for doing so, he entered the plaintiff's apartment unannounced and without prior consent.'" He argues that this finding is insufficient because the "court found only that a category of actions had happened, without making any findings of specific acts."

■ We have held that "when issuing a stalking order in response to a civil petition filed pursuant to RSA 633:3-a, III-a, the trial court must make findings on the record that a defendant engaged in two or more specific acts over a period of time, however short, which evidences a continuity of purpose." *Fisher*, 155 N.H. at 193 (quotation omitted). That holding established conformity between the requirements for civil stalking orders under RSA 633:3-a and protective orders under RSA chapter 173-B, as directed by RSA 633:3-a, II-a. *See id.* We reasoned that "in order to be consistent with our interpretation of RSA 173-B:5 in [*Fillmore v. Fillmore*, 147 N.H. 283 (2001)], we must conclude that RSA 633:3-a, II(a), which also contains an enumerated list of prohibited conduct, likewise requires specific findings of the course of conduct, which is defined as two or more acts." *Id.* Thus, we required that the trial court identify two or more specific acts that constitute prohibited conduct as enumerated in the statute; we did not mandate any more specificity than what the statute itself requires.

■ Accordingly, we are unpersuaded by the defendant's argument, with respect to the finding that he had entered the plaintiff's apartment "unannounced and without prior consent," that he "is left wondering when the incidents might have occurred." Neither the statute nor our case law requires the plaintiff to provide the specific dates upon which the prohibited acts occurred; rather, the statute requires "2 or more acts over a period of time, however short." RSA 633:3-a, II(a); *cf. In the Matter of Sawyer & Sawyer*, 161 N.H. 11, 16 (2010) (noting that while our case law "mandate[s] that the misconduct prompting a domestic violence petition not be too distant in time," it does not "oblige[] a plaintiff seeking a temporary protective order to set forth the specific dates upon which he or she allegedly suffered abuse").

■ The defendant likens this case to *Kiesman v. Middleton*, 156 N.H. 479 (2007), in which we vacated a stalking order because the trial court failed to make specific findings. *Kiesman*, 156 N.H. at 481-82; *see South v. McCabe*, 156 N.H. 797 (2008) (vacating stalking order in light of *Kiesman*). *Kiesman*

is distinguishable. There, "[t]he final stalking order, which was issued on a standardized form, [gave] no indication of the facts upon which the trial court relied in issuing the order, nor the reasoning." *Kiesman*, 156 N.H. at 481. Here, the trial court attached to its order two single-spaced pages of narrative findings and rulings summarizing the plaintiff's and defendant's testimony and concluding that on two or more occasions the defendant engaged in the prohibited conduct set forth in RSA 633:3-a, II(a)(2) and (3) by entering "the plaintiff's apartment unannounced and without prior consent and confronted her there." This finding is sufficient under *Fisher*.

The defendant next challenges the sufficiency of the evidence to support the court's finding that "on two or more occasions when the defendant had no legitimate official purpose for doing so, he .entered the plaintiff's apartment unannounced and without prior consent and confronted her there, when she was not dressed, with sexual remarks that would cause a reasonable person to fear for her safety." The defendant contends that this finding is "unsupported by the evidence where [the plaintiff] presented no evidence that [he] had ever entered her apartment when she was not dressed, nor did [she] testify to any incident where [he] entered her apartment unannounced and made sexual remarks." He contends that while the plaintiff testified that more than once the defendant had stopped by her apartment "right when [she] got out of the shower," "there was no testimony that on those occasions [he] had entered the apartment unannounced, or that she was undressed." He also notes that while the plaintiff testified that he made sexual comments to her when he came to check on flooding in her basement, that visit was not unannounced, but rather at her request.

We agree with the defendant that no direct evidence was adduced of any incident presenting all of the circumstances stated in the finding; namely, unannounced and unwelcome entry, the plaintiff being undressed, and the defendant making sexual remarks. The trial court appears to have summarized and condensed the evidence into a single finding. Nevertheless, we conclude that the evidence supports the court's finding that the defendant's "behavior constituted a 'course of conduct' under RSA 633:3-a, II(a)(2) & (3)."

██ ██ Pursuant to RSA 633:3-a, II(a)(3), a "course of conduct" may include "entering the [targeted] person's residence." The plaintiff testified that "a few weeks ago . . . [the defendant] also chose to walk in because the landlord noticed that her water bill had gone up. So he showed up unexpectedly, like he always does, and walked in." She recounted another incident following a visit from a code enforcement officer. She testified that although "the issue was taken care of" and "[e]verything was all set," the

defendant "showed up at [her] house, where he once again just walked in, came there for no — but to scream at [her]." This testimony supports the trial court's finding that "on two or more occasions when the defendant had no legitimate official purpose for doing so, he entered the plaintiff's apartment unannounced and without prior consent and confronted her there." Even assuming the evidence would not establish that each time the defendant entered the plaintiff's apartment unannounced and confronted her, she also was undressed and the defendant made sexual remarks, the other elements of the trial court's finding are sufficient, as a matter of law, to establish a course of conduct.

■ The record also supports a finding that, on other occasions, the defendant encountered the plaintiff when she was less than fully dressed and made sexual comments to her. While these circumstances, as noted above, need not be part of the specific acts proven under RSA 633:3-a, II(a)(3), they do provide context and support for the plaintiff's fear of the defendant. See RSA 633:3-a, I (requiring that the course of conduct be such as "would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family"). Indeed, the plaintiff stated that she felt threatened not only by the defendant's sexual advances, but by his access to her apartment. She testified: "I don't sleep at night. The man has a key and can enter my house whenever he wants. So I'm afraid to be there because he walks in whenever he wants." She later stated that "it's just not the sexual comments or advances. Kevin Hampsey walking in my apartment anytime he wants to, I take that as a threat."

The defendant next argues that the trial court erred in finding that the plaintiff and her children were afraid of him. He first challenges that finding in light of testimony that the real reason for the plaintiff's stalking petition was her fear of being evicted. Specifically, the defendant cites the testimony of the plaintiff's friend, Jenny Motuzas, that the reason "why this is finally all coming forth now [is] because she was scared of getting kicked out when she has three children." He further contends that the finding is unsupported by the evidence where the plaintiff called the defendant instead of his business partner when she had issues with the apartment and habitually failed to pay her rent on time, prompting the defendant to come to collect it. He argues that if the plaintiff "were truly afraid of [him], she would have sought to avoid contact with [him], not call him repeatedly" and would have timely paid her rent.

■ As noted previously, the court had before it the plaintiff's testimony regarding her and her children's fear of the defendant. "It was within the trial court's discretion to resolve conflicts in the testimony, measure the credibility of witnesses, and determine the weight to be given evidence."

*N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 717-18 (2007). We cannot say, on this record, that the court erred.

The defendant nevertheless argues that the trial court erroneously "made no findings as to the credibility of the witnesses." We agree with the plaintiff, however, that the trial court's order shows that "of necessity, [it] weighed the evidence and found Ms. Despres more credible than Mr. Hampsey." For instance, the court "conclud[ed] that whether the defendant makes a habit of entering other tenants' premises without permission, which the defendant provided several witnesses to deny, he did so at the plaintiff's apartment, for the purpose of having the contact with her that the plaintiff described."

Finally, the defendant argues that the trial court erred in issuing a civil stalking order against him where the plaintiff's allegations were too vague and nonspecific for him to defend against. He asserts that "[w]hen the trial court asked [the plaintiff] to be more specific as to dates and times when [the defendant] had entered her house unannounced and without consent, she was unable to provide any testimony as to specific incidents, specific dates, or specific times," so that all he could do in response "was provide a general denial."

As noted above, the plaintiff is not required to allege or prove the specific dates upon which the acts constituting a "course of conduct" occurred. *See* RSA 633:3-a, II(a); *cf. Sawyer*, 161 N.H. at 16. The plaintiff testified to at least two specific incidents of unwanted entry by the defendant, one related to the landlord's water bill and the other to a visit by a code enforcement officer. Moreover, the defendant himself testified regarding both specific incidents, claiming that each time he knocked on the door. The record does not support the defendant's claim that the plaintiff's allegations were too vague and nonspecific for him to defend against.

*Affirmed.*

DUGGAN and CONBOY, JJ., concurred.