Rockingham County Probate Court
No. 2011-218

IN RE GUARDIANSHIP OF RAYMOND B.

Argued: January 18, 2012
Opinion Issued: April 10, 2012

*Gallagher, Callahan & Gartrell, P.C.*, of Concord (*Jan P. Myskowski* and *Marla B. Matthews* on the brief, and *Ms. Matthews* orally), for the petitioners.

*Ansell & Anderson, P.A.*, of Bedford (*Ruth Tolf Ansell* on the brief and orally), for the respondent.

DALIANIS, C.J. The petitioners, Todd and Trent Bemis, appeal an order of the Rockingham County Probate Court (*Hurd*, J.) dismissing their petition for guardianship over the person and estate of their step-father, Dr. Raymond B. We affirm.

These facts appear in the record. On June 14, 2010, Dr. B. was residing in an assisted-living facility in Florida. That evening, he left the facility with his son, John. The two travelled to New Hampshire and began living together.

Around January 18, 2011, more than seven months after Dr. B. left the assisted-living facility, the petitioners filed a petition for guardianship over his person and estate. The petition alleged that, before leaving Florida, Dr. B. engaged in behavior that, for purposes of this appeal, we will assume was evidence of his legal incapacity at that time. *See* RSA 464-A:2, XI (2004). The petition, however, contained no allegations about the doctor's behavior during the seven months he had been living in New Hampshire. The petitioners had no contact with Dr. B. after he left Florida. After filing their petition, the petitioners requested that the trial court order a "Geriatric Psychiatric Evaluation" of Dr. B.

Dr. B. objected to the request for an evaluation and moved to dismiss the petition, arguing that it was "*per se* defective" because the guardianship statute requires that all evidence of a proposed ward's inability to care for himself "must have occurred within 6 months prior to the filing of the

petition and at least one incidence of such behavior must have occurred within 20 days of the filing of the petition." *Id.* After a hearing, the trial court dismissed the petition and denied the petitioners' motion for a psychiatric evaluation. The petitioners appeal both decisions.

Turning first to the motion to dismiss, we review the grant of a motion to dismiss by determining whether the petitioners' allegations are reasonably susceptible of a construction that would permit the relief sought. *See Beane v. Dana S. Beane & Co.*, 160 N.H. 708, 711 (2010). We assume the truth of the facts as alleged in the petitioners' pleadings and construe all reasonable inferences in the light most favorable to the petitioners. *See id.* We will uphold the granting of the motion to dismiss if the facts pleaded do not constitute a basis for legal relief. *Id.*

Determining whether the petitioners alleged facts that would permit them to obtain a guardianship requires interpretation of RSA chapter 464-A, Guardians and Conservators. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Despres v. Hampsey*, 162 N.H. 398, 400 (2011). We first examine statutory language, and, when possible, we ascribe the plain and ordinary meanings to the words used. *Id.* at 401. If the language of a statute is clear on its face, its meaning is not subject to modification. *Id.*

In this case, the relevant statutes make clear that a guardianship petition must contain recent evidence of the proposed ward's inability to care for himself. Under RSA 464-A:4, III (2004):

> A statement shall be filed with the petition for appointment of the guardian of the person and estate . . . containing facts showing the necessity for the appointment of a guardian . . . including specific factual allegations . . . which are claimed to demonstrate his or her inability to manage an estate, or to provide for personal needs for health care, food, clothing, shelter, or safety.

RSA 464-A:2, XI further requires that "[a]ll evidence of inability must have occurred within 6 months prior to the filing of the petition and at least one incidence of such behavior must have occurred within 20 days of the filing of the petition for guardianship." Read together, these provisions mandate that guardianship petitions allege at least one event evidencing incapacity that occurred within twenty days of the petition's filing. As a result, a petition that fails to allege such an event lacks an element necessary to obtain a guardianship, and must be dismissed.

This reading is consistent with the presumption of competence enjoyed by proposed wards, *see* RSA 464-A:8, IV (2004), and the purposes of the

guardianship chapter, which include "encourag[ing] . . . maximum self-reliance in the individual . . . and . . . impos[ing] protective orders only to the extent necessitated by the individual's functional limitations." RSA 464-A:1 (2004). When a guardianship petitioner comes before the probate court without recent evidence of the proposed ward's need for a guardian, the statutory time requirements permit the ward to rest upon the presumption that, whatever his past behavior, he is competent now.

In this case, the petitioners appear to concede that their petition lacks allegations of behavior within the statutory time frame, but assert that the policies underlying the guardianship scheme require that we disregard their petition's deficiency. They contend that the doctor's current living arrangement constitutes an unsanctioned guardianship that has prevented them from obtaining evidence of his incapacity. Allowing this situation to continue, they argue, frustrates the protection of civil rights that the legislature sought to protect through guardianship proceedings.

This argument misapprehends the civil liberty protection referred to in the guardianship chapter. The chapter's purpose is "to promote and protect the well-being of the proposed ward in involuntarily imposed protective proceedings." *Id.* It "provide[s] procedural and substantive safeguards for civil liberties and property rights of a proposed ward or an individual already under guardianship powers." *Id.* These policies aim to protect proposed wards from unjustified interference with civil liberties as a result of a guardianship proceeding, not to protect them from private individuals generally.

Thus, the statute does not, as the petitioners argue, empower the probate court to disregard statutory requirements when a petitioner alleges that the proposed ward's current living situation implicates civil liberties. To the contrary, adherence to the statutory requirements for a petition *avoids* infringement upon proposed wards' rights by preventing petitioners from haling them into court without recent evidence that a guardianship is necessary. Thus, the statute requiring recent evidence of a ward's inability to care for himself furthers — rather than frustrates — the guardianship chapter's policies, and we, therefore, reject the petitioners' argument. Because the petitioners failed to allege evidence of inability that occurred within the statutory time frame, the trial court properly dismissed their petition. *See* RSA 464-A:2, XI.

The petitioners next argue that the trial court unsustainably exercised its discretion when it denied their motion for a psychiatric evaluation of Dr. B. They contend that not ordering an evaluation was error because: (1) the parties agreed the doctor's capacity was "diminished"; (2) the extent

of his capacity was determinative in the case; and (3) such an evaluation would be "non-invasive." Assuming without deciding that the trial court had discretion to order an evaluation despite the inadequacy of the petitioners' allegations, the court did not unsustainably exercise its discretion by declining to do so. The trial court could have reasonably concluded that the doctor's interest in freedom from an unwanted psychological examination outweighed the petitioners' interests in procuring evidence of his alleged incapacity.

*Affirmed.*

HICKS, CONBOY and LYNN, JJ., concurred.