# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2014-0735, <u>September Quint v. Alicia Fitzpatrick</u>, the court on July 13, 2015, issued the following order:**

Having considered the brief and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Alicia Fitzpatrick, appeals a final stalking protective order, <u>see</u> RSA 633:3-a (Supp. 2014), issued against her by the Circuit Court (<u>Varney</u>, J.) for the protection of the plaintiff, September Quint. The defendant argues that the evidence was insufficient to support the issuance of a stalking order and that the trial court erred in relying upon an order dismissing a prior stalking petition filed against her to support its decision in this case.

The defendant first argues that the evidence was insufficient to support the issuance of the stalking order. On appeal, we review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. <u>Fisher v. Minichiello</u>, 155 N.H. 188, 190 (2007). We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. <u>Id</u>. We view the evidence in the light most favorable to the prevailing party, in this case, the plaintiff. <u>Id</u>.

A person commits the offense of stalking if he or she purposely or knowingly engages in a course of conduct targeted at a specific individual, which the actor knows will place that individual in fear for his or her personal safety or the safety of a member of that individual's immediate family. <u>See</u> RSA 633:3-a, I(b). "Course of conduct" means two or more acts over a period of time, however short, which evidences a continuity of purpose. <u>See</u> RSA 633:3-a, II(a). A course of conduct may include acts which threaten the safety of the targeted person or an immediate family member. <u>See</u> RSA 633:3-a, II(a)(1). However, a course of conduct shall not include conduct necessary to accomplish a legitimate purpose. <u>See</u> RSA 633:3-a, II(a).

The plaintiff testified that she lives on a dead-end, dirt road called Ridge Road, and that the defendant, who owns a home on the same road, must pass by the plaintiff's home to reach her own residence. The plaintiff testified that she has had issues with the defendant driving her vehicle very fast on Ridge Road "for years," starting before her five-year-old daughter was born. More

recently, the plaintiff and her two children, ages three and five, were walking on the road with the plaintiff's mother and two dogs when the defendant sped past them at approximately fifty miles per hour, without slowing down. When the plaintiff told her to slow down, the defendant "slammed her brakes on," "[p]ut her car in reverse . . . rolled her window down, and screamed, "This is no place for animals. This is no place for children."

On the day the plaintiff filed her petition for a stalking order, the plaintiff and her husband were standing at the school bus stop with their children at the end of Ridge Road. The defendant approached in her car at an excessive rate of speed, stopped suddenly at the stop sign, and then drove away quickly. Approximately five minutes later, the plaintiff observed the defendant driving her car behind the school bus as it approached the bus stop. As the plaintiff's children crossed the street and boarded the bus, the defendant was leaning out of her car taking pictures of them. When the bus pulled away, the defendant drove into someone's driveway, backed out into the street, and started driving on the wrong side of the street, "almost causing a head-on collision." The plaintiff testified that as a result of the defendant's conduct, she felt that her safety was in jeopardy, and that because of the defendant's manner of driving, she did not believe that she could safely walk down Ridge Road with her children to the bus stop.

The defendant testified that one year earlier, another neighbor filed a stalking petition against her, but that the petition was dismissed. In that case, the court found the defendant's driving, "while concerning, even alarming, cannot be attributed to any animus directed at the plaintiff or his family." The court found that the defendant "could not have known the plaintiff's son was coming around the corner just as she was." The court admonished the defendant "to drive more carefully and respectfully of other motorists likely to be on the road and cyclists."

In this case, the trial court found that the defendant committed the offense of stalking by repeatedly operating her vehicle in a reckless manner intended to be a threat, "even after being admonished against this behavior by this Court in a prior case."

The defendant first argues that her conduct was necessary to accomplish a legitimate purpose because, as the plaintiff acknowledged, the defendant can access her property only by driving on Ridge Road past the plaintiff's residence. However, it was not the defendant's mere use of the road that constituted a course of conduct; in fact, the trial court's order specifically provides that the defendant is permitted full use of Ridge Road for access to her property. Rather, it was the reckless manner in which the defendant used the road, which the court found was intended to be a threat to the plaintiff, that formed the basis for the court's order.

2

Relying primarily upon our decision in Tosta v. Bullis, a domestic violence case interpreting RSA chapter 173-B, the defendant next argues that the alleged acts were "too distant in time" and too "non-specific" to support a stalking order. See Tosta v. Bullis, 156 N.H. 763, 767-68 (2008). She argues that the alleged conduct was too attenuated because the first alleged incident occurred five years earlier. However, as previously described, the plaintiff testified that there were two more recent acts constituting a course of conduct, including one that occurred on the date she filed the petition.

The defendant also argues that there was insufficient contact between the parties to support the stalking order and that the evidence was insufficient to prove that her conduct was targeted at the plaintiff or her family. However, the plaintiff testified that the defendant yelled at her and her family, "This is no place for animals," and, "This is no place for children." The defendant's comments were directed to the plaintiff and her family. In addition, the plaintiff testified that the defendant had been taking photographs of her and her family when they were out raking, when the plaintiff was walking with her children, and at the bus stop. The defendant testified that she took the photographs to protect herself, "[b]ecause they're accusing me of trying to injure children." "It was within the trial court's discretion to resolve conflicts in the testimony, measure the credibility of witnesses, and determine the weight to be given evidence." Despres v. Hampsey, 162 N.H. 398, 405 (2011) (quotation omitted).

Finally, the defendant argues that the trial court erred in relying upon an order dismissing a prior stalking petition filed against her to support its decision in this case. She argues that even if the allegations against her in that case were true, they did not involve a course of conduct targeted at the plaintiff in this case. However, the record shows that the trial court did not rely upon the prior order to prove that the defendant's conduct was targeted at the plaintiff in this case. Rather, the court relied upon the prior order to prove that the defendant operated her vehicle in a reckless manner "even after being admonished against this behavior by this Court in a prior case." Based upon this record, we conclude that the evidence was sufficient to support the court's stalking order. See Fisher, 155 N.H. at 190.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

3