NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court-Concord Probate Division
No. 2021-0118


IN RE GUARDIANSHIP OF C.R.

Submitted: January 13, 2022
Opinion Issued: February 8, 2022


John M. Formella, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the memorandum of law), for the petitioner.


Amy B. Davidson, of Contoocook, by brief, for the respondent.


Tracy M. Culberson, of Concord, for the Office of Public Guardian, filed no brief.


HICKS, J. The respondent, C.R. (ward), appeals an order of the Circuit Court (Maloney, J.) appointing a guardian over her person. See RSA 464-A:9 (2018). She argues that the petitioner, New Hampshire Hospital (NHH), failed to prove beyond a reasonable doubt that she is incapacitated. See RSA 464-A:9, III. She also argues that the trial court's findings of incapacity exceeded the scope of the pleadings and evidence at trial, thereby depriving her of notice and an opportunity to be heard. We affirm in part, vacate in part, and remand.

## I. Facts

The trial court could have found the following facts. The ward suffers from schizoaffective disorder, and, in November 2020, was involuntarily admitted to NHH for a two-year period. At the time, she subscribed to a variety of paranoid beliefs.

NHH obtained emergency treatment authorization to provide the ward with psychiatric medication without her consent, see N.H. Admin. R., He-M 306, and, although her condition improved, the medication caused side effects that required a reduction in dosage. The ward declined to take any medication to treat the side effects or any alternative medication that would not cause the side effects. The ward does not believe that she has a mental illness or that she needs medication.

The emergency treatment authorization expired on January 4, 2021. In the two weeks before the February 2021 guardianship proceeding, the ward started exhibiting worsening thoughts that people were trying to target her, and her mood fluctuated more, spurring concerns that the current medication was insufficient.

NHH filed the instant guardianship petition at the end of January 2021, alleging, among other things, that a guardianship is necessary because the ward "states daily that she doesn't need" her medications, "thinks she owns the apartment building from which she was evicted," "needs assistance in her day-to-day activities," and "cannot weigh the risks vs. benefits of treatment." Following a hearing at which the ward appeared with counsel, the trial court granted NHH's petition, appointing the Office of Public Guardian as guardian over her person. This appeal followed.

## II. Analysis

To obtain a guardianship under RSA chapter 464-A, the petitioner must prove that:

> (a) The person for whom a guardian is to be appointed is incapacitated; and

> (b) The guardianship is necessary as a means of providing continuing care, supervision, and rehabilitation of the individual, or the management of the property and financial affairs of the incapacitated person; and

> (c) There are no available alternative resources which are suitable with respect to the incapacitated person's welfare, safety, and

2

rehabilitation or the prudent management of his or her property and financial affairs; and

(d) The guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the civil rights and liberties of the proposed ward.

RSA 464-A:9, III. "[T]here is a legal presumption of capacity," and the petitioner must prove "the allegations set forth in the petition by competent evidence." RSA 464-A:8, IV (2018). "Such proof must be established beyond reasonable doubt that the proposed ward is incapacitated and in need of a guardian." Id. Following the hearing, the court shall dismiss the proceedings if it determines that the proposed ward has the capacity to care for herself, RSA 464-A:9, II, or may "enter any other appropriate order" consistent with its findings, RSA 464-A:9, VI.

Our standard of review is established by statute. See RSA 567-A:4 (2019); see also RSA 464-A:47 (2018) (providing that appeals under RSA chapter 464-A are governed by RSA chapter 567-A). When reviewing a trial court decision to appoint a guardian, the trial court's factual findings "are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4; see RSA 490-F:3 (Supp. 2021) (granting the circuit court the jurisdiction, powers, and duties conferred on the former probate and district courts and upon the former family division), :18 (Supp. 2021) (providing that references to the probate or district courts or family division shall be deemed to be to the circuit court where it has exclusive jurisdiction of a subject matter).

Resolving the issues in this appeal requires us to engage in statutory interpretation. We look first to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Anderson v. Robitaille, 172 N.H. 20, 22 (2019). We give effect to every word of a statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include. In re J.P., 173 N.H. 453, 460 (2020). We also construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Anderson, 172 N.H. at 22-23. We do not construe statutes in isolation; instead, we attempt to construe them in harmony with the overall statutory scheme. Id. at 22.

A. Sufficiency of the Evidence

The ward first argues that the evidence was insufficient to support a finding that she is "incapacitated." "Incapacity" is a legal, not a medical, disability, and refers to "any person who has suffered, is suffering or is likely to suffer substantial harm due to an inability to provide for his [or her] personal

3

needs for food, clothing, shelter, health care or safety or an inability to manage his or her property or financial affairs." RSA 464-A:2, XI (2018). Incapacity is measured by "functional limitations," id., that "impair [an individual's] ability to participate in and perform minimal activities of daily living that secure and maintain proper food, clothing, shelter, health care or safety for himself or herself." RSA 464-A:2, VII (2018). "Isolated instances of simple negligence or improvidence, lack of resources or any act, occurrence or statement if that act, occurrence or statement is the product of an informed judgment shall not constitute evidence of inability to provide for personal needs or to manage property." RSA 464-A:2, XI.

Because the ward challenges the sufficiency of the evidence, our task is to review the record to determine whether it supports the trial court's findings beyond a reasonable doubt. In re Guardianship of G.S., 157 N.H. 470, 473-74 (2008). In a sufficiency challenge, "we examine whether the [trial] court's actual or implicit factual findings on the statutory components required for guardianship are reasonably supported" by the evidence. Id. at 474. However, we defer to the court's judgment on such issues as resolving conflicts in testimony, measuring the credibility of witnesses, and determining the weight to be given testimony. Id.

The ward contends that "there was not proof beyond a reasonable doubt as to [her] incapacity, as NHH did not make a showing of substantial harm due to inability to provide for needs." See RSA 464-A:2, XI. We disagree.

The ward's psychiatrist opined that the ward is unable "to care for herself with respect to . . . her psychiatric medications, and with respect to medical treatment." According to the psychiatrist, the ward is unable to weigh "the risks and benefits of proposed treatment" and incapable of making informed decisions regarding her treatment needs. The psychiatrist further testified that NHH evaluated the ward's "ability to identify dangers in the home," budget finances, care for her home, and complete activities of daily living, and found that the ward "needed assistance almost across the board." The psychiatrist opined that, without a guardianship, the ward was "likely [to] suffer substantial harm because she can't provide for her basic needs." The psychiatrist noted that, even while at NHH, the ward was unable to care for herself in that she did not shower for 47 days; wore shoes that were three or four sizes too big, falling apart, and held together with tape; and refused to allow staff to assess what appeared to be a fungal infection on her feet.

As a result, the psychiatrist expressed concern about the ward's ability to live independently. She noted that the ward intended to return to the apartment from which she was evicted, although she has refused to agree to pay the $3,000 in back rent that she owes. The psychiatrist opined that "the only safe options for discharge" were for the ward to live independently but with assistance at home, or to live in a group home, or in an assisted living

4

facility. The psychiatrist noted that the ward had "declined all of those options." The psychiatrist testified that if a guardian were appointed for the ward, then the ward could be discharged from the hospital safely, she could stabilize on her medication, and she might be able to return to independent living. According to the psychiatrist, discharging the ward from the hospital without a guardian would be unsafe.

Based upon this record, we conclude that the evidence was sufficient for the trial court to have found, beyond a reasonable doubt, that the ward "is likely to suffer substantial harm due to an inability to provide for [her] personal needs for food, clothing, shelter, health care or safety or an inability to manage . . . her property or financial affairs." RSA 464-A:2, XI; see In re Guardianship of Peter R., 159 N.H. 562, 563-64 (2009) (ruling that evidence that ward refused to take medication recommended by his psychiatrist, had been involuntarily admitted to NHH for a period of no more than one year with a conditional discharge, and suffered from a psychotic disorder was sufficient to support trial court's finding of incapacity).

The ward next asserts that "[t]here was also insufficient testimony that guardianship was necessary, appropriate, or least restrictive." Before imposing a guardianship, the trial court must find, beyond a reasonable doubt, that "[t]he guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the civil rights and liberties of the proposed ward." RSA 464-A:9, III(d). "Least restrictive form of intervention" means that the guardianship imposed "represents only those limitations necessary to provide him or her with needed care and rehabilitative services, and that the ward shall enjoy the greatest amount of personal freedom and civil liberties consistent with his or her mental and physical limitations." RSA 464-A:2, XIV (2018).

Contrary to the ward's conclusory assertion, there is support in the record for the trial court's finding that guardianship is the least restrictive intervention for the ward. The ward's treating psychiatrist specifically testified that guardianship is the least restrictive "treatment option right now" in that it is "less restrictive than her remaining in the hospital." The psychiatrist explained that if a guardian were appointed, NHH "would be able to discharge [the ward] from the hospital" and "be able to stabilize her on the psychiatric medication." She expressed the hope that "with the right medication," the ward might be able to return "to independent living, which is what she wants." This testimony is sufficient to support the trial court's finding that "[t]he guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the civil rights and liberties of the proposed ward." RSA 464-A:9, III(d).

B. Notice and Opportunity to be Heard

Next, we consider the ward's argument that she was deprived of notice and an opportunity to be heard as to the following legal rights that were not specified in NHH's petition for guardianship: (1) the right to marry or divorce; (2) the right to make a will or waive the provisions of a will; (3) the right to hold or obtain a motor vehicle operator's license; (4) the right to initiate, defend, or settle lawsuits; and (5) the right to make decisions concerning education matters and training. The ward contends that the trial court's finding that she was incapacitated with regard to these rights "was tantamount to creating new claims, without affording [her] any opportunity to oppose them before her liberty and autonomy were further significantly curtailed." Because we decide cases on constitutional grounds only when necessary, see Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 35 (2005), we interpret the ward's argument to be that she did not receive the notice required by RSA chapter 464-A, and we agree with her.

NHH correctly observes that the ward did not preserve this argument for our review by raising it in the trial court in a motion for reconsideration. See N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002). "Nonetheless, we elect to address the issue on appeal because preservation is a limitation upon the parties to an appeal, not upon the reviewing court, and because the appeal issue constitutes a discrete issue of statutory interpretation, requiring no further factual development." State v. Kardonsky, 169 N.H. 150, 152 (2016).

The goal of RSA chapter 464-A is to "protect proposed wards from unjustified interference with civil liberties as a result of a guardianship proceeding." In re Guardianship of Raymond B., 163 N.H. 502, 505 (2012). "Th[e] chapter is designed to provide procedural and substantive safeguards for civil liberties and property rights of a proposed ward or an individual already under guardianship powers." RSA 464-A:1 (2018). Thus, for instance, a petition for a guardianship, similar to a petition for juvenile delinquency or a criminal complaint, In re DeLucca, 121 N.H. 71, 72 (1981), must provide the ward with "adequate notice of the substance of the proceedings." In re Russell C., 120 N.H. 260, 262 (1980) (referring to a juvenile petition). The petition must include sufficient information "to enable [the ward] to prepare a defense." In re DeLucca, 121 N.H. at 72.

Thus, RSA 464-A:5 requires that the ward be informed about "the nature, purpose, and legal effects of the appointment of a guardian of the person and estate, or the person, or estate." RSA 464-A:5, I (2018) (emphasis added). The trial court complies with this statutory requirement by appending the petition to the orders of notice.

6

NHH argues that although it provided the ward with "a list of the rights NHH requested that the court find [the ward] incapable of exercising, the statute does not require" that such a list be provided. (Citation omitted.) NHH reasons, therefore, that the statute did not entitle the ward to notice of "each and every right that the court might find the proposed ward incapable of exercising." We disagree.

To determine what is meant by the "legal effects of the appointment of a guardian," RSA 464-A:5, I, we consider RSA chapter 464-A as a whole. See Anderson, 172 N.H. at 22-23. In so doing, we find RSA 464-A:9, IV instructive. That provision provides:

> No person determined to be incapacitated and thus requiring the appointment of a guardian of the person and estate, or the person, or the estate, shall be deprived of any legal rights, including the right to marry, to obtain a motor vehicle operator's license, to testify in any judicial or administrative proceedings, to make a will, to convey or hold property, or to contract, except upon specific findings of the court. The court shall enumerate in its findings which legal rights the proposed ward is incapable of exercising.

RSA 464-A:9, IV (2018).

Reading RSA 464-A:5, I, together with RSA 464-A:9, IV, and relying upon the plain meaning of the language used, we conclude that the "legal effects of the appointment of a guardian" include the "legal rights the proposed ward" is deemed "incapable of exercising." In other words, one of the legal effects of a guardianship is to deprive a ward of specified legal rights.

Pursuant to RSA 464-A:5, I, therefore, the proposed ward must be informed of the particular legal rights of which the guardianship may deprive her. Cf. In re DeLucca, 121 N.H. at 72. Accordingly, contrary to NHH's argument, NHH was required to inform the ward of the specific rights it requested the court find her to be incapable of exercising. The statute's notice requirement is consistent with the overall purposes of RSA chapter 464-A, which are "to encourage the development of maximum self-reliance in the individual; . . . encourage rehabilitative care, rather than custodial care for incapacitated individuals; and . . . impose protective orders only to the extent necessitated by the individual's functional limitations." RSA 464-A:1 (emphasis added).

Here, NHH alleged that the ward was incapable of exercising five specific legal rights: (1) the right to travel or decide where to live; (2) the right to refuse or consent to medical or other professional care, counseling, treatment, or service; (3) the right to have access to, grant release of, withhold, deny, or refuse authorization for the guardian to obtain access and release her

confidential records and papers; (4) the right to cancel, reject, or oppose any authority or power granted to the guardian; and (5) the right to make contracts or grant power of attorney or other authorizations.

Although the petition informed the ward that the trial court could "impose additional orders as a result of the hearing," it did not inform her that NHH was asking the court to find her incapable of exercising her rights to marry or divorce, make a will or waive a will's provisions, hold or obtain a motor vehicle operator's license, initiate/defend/settle lawsuits, or make decisions concerning educational matters or training. (Capitalization omitted.) Under these circumstances, we hold that the ward did not receive the notice contemplated by RSA 464-A:5, I, as to those rights. Cf. RSA 464-A:9, IV. Therefore, we vacate the guardianship order to the extent that it deprived her of those rights. We otherwise affirm the order appointing a guardian over the person of the ward and remand.

Affirmed in part; vacated in part; and remanded.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.