**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2024-0523, <u>D.V. v. R.G.</u>, the court on July 2, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendant, R.G., appeals a civil stalking final order of protection issued by the Circuit Court (<u>Walch</u>, J.) in favor of the plaintiff, D.V. <u>See</u> RSA 633:3-a, III-a (2016). We affirm.

I.      <u>Background</u>

The following facts were found by the trial court or are otherwise supported by the record. The plaintiff owns a business near an apartment building in Manchester where the defendant lives. In June 2024, the defendant let her cat outside. The cat was apparently sick and dying. On the same day, the plaintiff's daughter found a cat on the plaintiff's property that appeared to be in poor health. The plaintiff took the cat in and spent several thousand dollars on veterinary care.

On Friday, June 28, the plaintiff learned that the defendant had lost a cat and went to the defendant's apartment to inquire whether the cat belonged to the defendant. Although the parties dispute what the plaintiff said or promised during that meeting, there is no dispute that, by the end of the day, the plaintiff refused to return the cat to the defendant. According to the plaintiff, she was concerned that, if the cat were the defendant's cat, the defendant had abused or neglected it. The plaintiff communicated to the defendant that she planned to consult with Manchester Animal Control when it opened the following Monday morning.

By Saturday, the defendant had made claims on social media that the plaintiff and her daughter had stolen her cat. The defendant posted, "Your karma is going to come at you ten fold. Give him back like you said you would." The defendant also posted that the plaintiff had refused to give the cat back because the defendant is Black. When individuals posted threatening statements in response to the defendant's original post — including statements such as "Shawty take ya gun n go get ya f****** cat who tf these ppl think they are" and "Go take her daughter" — the defendant expressed approval of the posts as evidenced by the defendant's social media profile picture and a red heart on each post.

On Sunday, the defendant posted information on social media about the plaintiff and her daughter, including among other things, their names and the name of their business. A number of people left statements of violence directed at the plaintiff such as: "i hope your shop burns down you racist a** b****"; "Should've been your worthless carcass they found in the streets, [plaintiff's name]. F******, disgusting, worthless, racist cat killer"; "You should find a rope and hang yourself with it already"; "Disgusting ugly c*** karma is coming for you. And the f****** law. You evil b****, I hope you f****** die screaming And your little c*** [plaintiff's daughter's name] too." The defendant also organized a protest outside the plaintiff's business, at which a protester chanted, "Come out b****, come out." On Tuesday, when the plaintiff's daughter brought the cat, at the suggestion of the police, to the animal shelter, the cat had died. The defendant then claimed on social media that the plaintiff had killed the cat.

The plaintiff filed a stalking petition against the defendant. Following a two-day bench trial, the circuit court issued a stalking final order of protection in favor of the plaintiff. The court found that the defendant recklessly engaged in a course of conduct targeted at the plaintiff by "weaponiz[ing]" social media against her and foreseeably causing public outrage, and that the plaintiff reasonably feared for her own safety and the safety of her daughter as a result. The court also found that there was no legitimate purpose for the defendant's conduct independent of inflaming the public against the plaintiff and her business, and that her conduct did not constitute constitutionally protected speech. This appeal followed.

II.    Analysis

A stalking victim "may seek relief by filing a civil petition in the [circuit] court." RSA 633:3-a, III-a; see RSA 490-F:18 (Supp. 2024) (explaining that statutes which reference the jurisdiction of the district court are deemed to refer to the circuit court). Upon proof by a preponderance of the evidence, the court "shall grant such relief as is necessary to bring about a cessation of stalking." RSA 633:3-a, III-a. "Stalking" is defined to include "[p]urposely, knowingly, or recklessly engag[ing] in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear." RSA 633:3-a, I(a) (2016).

"'Course of conduct' means 2 or more acts over a period of time, however short, which evidences a continuity of purpose." RSA 633:3-a, II(a) (2016). Acts that may constitute a "course of conduct" include, but are not limited to, engaging in "[a]ny act of communication, as defined in RSA 644:4, II." RSA 633:3-a, II(a)(7). "[C]ommunicates," as defined in RSA 644:4, II (Supp. 2024), means "to impart a message by any method of transmission, including, but not limited to . . . personally delivering or sending or having delivered any

2

information or material by . . . electronic transmission, including electronic transmissions generated or communicated via computer."

The trial court's "findings of facts shall be final, but questions of law may be transferred from the circuit court to the supreme court." RSA 173-B:3, VI (2022); see RSA 633:3-a, III-a (providing that, in civil stalking proceedings, "the procedures and burdens of proof to be applied . . . shall be the same as those set forth in RSA 173-B"). We review sufficiency of the evidence claims as a matter of law and will uphold the trial court's findings and rulings unless they lack evidentiary support or are tainted by error of law. Despres v. Hampsey, 162 N.H. 398, 401 (2011). We review the evidence in the light most favorable to the plaintiff, deferring to the trial court's evaluation of the witnesses' credibility. Id. at 401, 404; see State v. Giles, 140 N.H. 714, 718-19 (1996) ("We defer to the [factfinder's] findings on credibility in part because a trial transcript provides no indication of a witness's tone of voice or demeanor, two useful tools in the assessment of credibility.").

In this case, the trial court found that the defendant recklessly engaged in a course of conduct targeted at the plaintiff when, within the context of a dispute between the parties concerning a cat, the defendant: (1) posted on a public social media account, "Your karma is going to come at you ten fold. Give him back like you said you would"; (2) posted on multiple public social media accounts the names of the plaintiff, the plaintiff's daughter, and the plaintiff's business, photographs of the plaintiff, and information the defendant could reasonably foresee would, and in fact did, inflame public outrage toward the plaintiff; (3) expressed approval of responses to her social media posts that threatened violence against the plaintiff and her daughter; and (4) conducted a "protest" at the plaintiff's business at which one protester stated, "Come out b****, come out." The trial court further found that the defendant's conduct caused the plaintiff to reasonably fear for her safety and the safety of her daughter. Finally, the trial court determined that the defendant's actions did not serve a legitimate purpose or constitute constitutionally protected speech.

On appeal, the defendant first argues that, because she did not personally convey threatening messages to or concerning the plaintiff or the plaintiff's daughter, or expressly encourage others to convey such threats, the evidence was insufficient to establish stalking liability. However, RSA 633:3-a, I(a) does not require proof that the defendant personally conveyed threats of violence to or concerning the plaintiff or a member of the plaintiff's immediate family, or expressly encouraged others to do so. Rather, the statute requires that the defendant purposely, knowingly, or recklessly engaged in a "course of conduct," targeted at the plaintiff, that caused the plaintiff reasonably to fear for her own safety or the safety of a member of her immediate family, and the person was actually placed in fear. RSA 633:3-a, I(a).

3

Here, although the defendant claims that she did not purposely cause the plaintiff to fear for her safety, the trial court found that she recklessly engaged in a course of conduct, targeted at the plaintiff, that caused the plaintiff reasonably to fear for her own safety and the safety of her daughter. The defendant has presented no developed legal argument challenging the trial court's findings that she acted recklessly, that her actions constituted a "course of conduct" targeted at the plaintiff, or that her actions served no legitimate purpose. See State v. Blackmer, 149 N.H. 47, 49 (2003) (declining to address arguments that were not sufficiently developed for appellate review); State v. Newton, 175 N.H. 279, 290 (2022) ("A blanket assertion, without developed legal argument is insufficient to warrant judicial review."). Nor has the defendant challenged the trial court's finding that her actions foreseeably inflamed public outrage toward the plaintiff. Viewing the evidence in the light most favorable to the plaintiff, we conclude that the trial court's finding that the defendant's conduct violated RSA 633:3-a was neither lacking in evidentiary support nor tainted by error of law. See Despres, 162 N.H. at 401.

The defendant next argues that the plaintiff was not entitled to relief under RSA 633:3-a, III-a because the plaintiff is not an "innocent citizen." The defendant claims that the plaintiff was not "innocent" because she allegedly provoked the defendant's conduct by her own actions that gave rise to the dispute. However, the defendant cites no authority for the proposition that provocation is a defense to a civil stalking order. Cf. S.D. v. N.B., 176 N.H. 44, 53 (2023) (observing, in the context of ruling on the constitutionality of a protective order that had the effect of restraining the defendant's speech, that "RSA 633:3-a was enacted to protect innocent citizens from a course of conduct that would cause a reasonable person to fear for his or her personal safety, or the safety of a member of that person's immediate family"). Even if provocation were a defense, however, we note that the plaintiff disputed many of the defendant's claims regarding the plaintiff's conduct relative to the underlying dispute. We defer to the trial court's evaluation of the witnesses' credibility. See Despres, 162 N.H. at 401, 404.

Finally, the defendant argues that the trial court's reliance upon the "protest" violates her right to free speech under the First Amendment to the United States Constitution, and that its findings of fact with respect to the protest are contrary to "the testimony at trial and . . . unsupported by the record." We note that the defendant does not argue that her social media posts were constitutionally protected.

The trial court determined that the defendant did not engage in constitutionally protected speech, and other than asserting that she has a First Amendment right to peacefully protest, the defendant presents no developed legal argument why her conduct, under the facts of this case, was constitutionally protected. Therefore, we decline to address it. See Blackmer, 149 N.H. at 49; Newton, 175 N.H. at 290. Moreover, while the parties showed

4

videos of the protest at trial, the videos are not part of the record on appeal. On this record, we conclude that the defendant has not established that the trial court erred by determining that she did not engage in constitutionally protected speech under the facts of the case.

Affirmed.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**