# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0698, <u>B.K. v. B.W.</u>, the court on October 8, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(3). The defendant, B.W., appeals a civil stalking final order of protection issued by the Circuit Court (<u>Collins</u>, J.) in favor of the plaintiff, B.K. <u>See</u> RSA 633:3-a, III-a (2016). The defendant argues that the evidence was insufficient to support a finding that he stalked the plaintiff. We agree and, accordingly, reverse.

We review sufficiency of the evidence claims as a matter of law and will uphold the trial court's findings and rulings unless they lack evidentiary support or are tainted by error of law. <u>Despres v. Hampsey</u>, 162 N.H. 398, 401 (2011). We review the evidence in the light most favorable to the plaintiff, deferring to the trial court's evaluation of the witnesses' credibility. <u>Id</u>.

A person commits the offense of stalking if, among other things, that person "[p]urposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear." RSA 633:3-a, I(a) (2016). For the purposes of RSA 633:3-a:

> A person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation.

RSA 626:2, II(c) (2016).

"Course of conduct" is defined as "2 or more acts over a period of time, however short, which evidences a continuity of purpose." RSA 633:3-a, II(a) (2016). A course of conduct may include, among other things, "[f]ollowing, approaching, or confronting that person, or a member of that person's immediate family," "[a]ppearing in close proximity to, or entering the person's residence, place of employment, school, or other place where the person can be found," "[p]lacing an object on the person's property, either directly or through

a third person, or that of an immediate family member," or "[a]ny act of communication." RSA 633:3-a, II(a)(2), (3), (5), (7). A course of conduct does not, however, include constitutionally protected activity, nor does it include "conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person." RSA 633:3-a, II(a). The plaintiff bears the burden to prove "stalking" by a preponderance of the evidence. RSA 633:3-a, III-a.

The plaintiff testified that she lives on a dead-end road and must walk past the defendant's property to walk her children to school or otherwise walk recreationally in the neighborhood. She testified that on two occasions, August 26 and October 29, 2024, the defendant's dogs ran out into the street and charged at her when she walked past his property. In addition to these two encounters, the plaintiff testified that she was "very frustrated because this happens frequently," and that "it's happened about 15 to 20 times" over the past ten years.

Regarding the August 26 encounter, the plaintiff testified that she, her husband, her children, and her dog "were charged by two of [the defendant's] dogs that came out into the street growling and barking," causing the plaintiff's children to cry. The plaintiff asked the defendant to leash his dogs, and the defendant responded by yelling, among other things, "what the eff are you going to do about it?" to the plaintiff and her husband. The plaintiff testified that she was fearful that the defendant would attack her or her husband during this exchange.

Regarding the October 29 encounter, the plaintiff testified that as she walked by with her dog, four of the defendant's dogs were in the front yard of his property, the "smallest dog" charged at her, and "the other dogs were loose, off leash, running around, growling." The plaintiff recalled that the defendant and his wife "were trying to corral their dogs," but she "stopped in [her] tracks because [she] was scared" and began recording the incident on her cell phone. The defendant's wife told the plaintiff, "it's just a puppy," and the plaintiff responded, "I don't care." The plaintiff testified that the defendant told her to "keep effing walking" and that when she asked the defendant not to "speak to [her] like that," the defendant's wife made threatening remarks to her.

For his part, the defendant testified that he "put up a fence since the first encounter," and that the "second encounter was . . . very much out of control." He explained that, during the second encounter, he and his wife were loading one of their elderly dogs into the car to take it to a veterinarian, and his other dogs "pushed the door open" and ran into the front yard while the plaintiff happened to be walking by. He acknowledged that letting his dogs get loose was "not acceptable" but explained that the dog that approached the plaintiff was a six-month-old labradoodle puppy that weighed ten pounds. The defendant testified that he was working with animal control to control his dogs.

2

In addition, he testified that he apologized to the plaintiff each time his dogs approached her, and he also apologized to the plaintiff for his language.

In its order, the trial court found that "on two occasions the [defendant] recklessly allowed his dogs outside without a leash knowing their propensity to approach the plaintiff in a menacing manner placing both the plaintiff and her young children in fear." Based upon this finding, the trial court concluded that the defendant recklessly engaged in a course of conduct targeted at the plaintiff that would cause a reasonable person to fear for his or her safety or the safety of a member of that person's immediate family, and the plaintiff was actually placed in such fear. See RSA 633:3-a, I(a).

The defendant argues that there was insufficient evidence that, among other things, he recklessly engaged in a course of conduct that was targeted at the plaintiff. He asserts that the evidence demonstrated at most that he "inadvertently let his dogs out at the time [at] which [the plaintiff] happened to be walking by his residence months apart in time." We agree.

The record does not support the trial court's finding that the defendant's conduct was specifically targeted at the plaintiff. See RSA 633:3-a, I(a). There was no evidence, for example, that the defendant recklessly allowed his dogs to be outside only when the plaintiff was approaching or in front of his property, or specifically at times when the plaintiff typically walked by his property. Rather, the evidence established only that the defendant's dogs either were outside or ran outside on two occasions when the plaintiff was walking by with her family and her dog. While the defendant's conduct may have affected the plaintiff when she walked past his property, the evidence does not support the conclusion that the defendant acted recklessly as to the risk of causing fear in the plaintiff specifically.

Furthermore, the evidence regarding the two specific encounters does not support the finding that the defendant engaged in a course of conduct specifically targeted at the plaintiff. The plaintiff's husband testified that, during the August 26 encounter, as he and his family were walking by the defendant's residence, the defendant opened his door to let the dogs out, but that the defendant "probably didn't see" them walking by. Regarding the October 29 encounter, the defendant testified that the plaintiff happened to walk by while he and his wife were both carrying their elderly dog to their vehicle. While they were doing so, the other dogs "pushed the door open," running into the front yard toward the plaintiff. The plaintiff agreed that the defendant and his wife "were trying to corral their dogs." We agree with the defendant that "the testimony supports the fact that these were incidental events," not a course of conduct targeted at the plaintiff specifically. See RSA 633:3-a, I(a).

3

Accordingly, we conclude that the trial court erred by finding that the defendant engaged in a course of conduct targeted at the plaintiff, and by granting the plaintiff's petition on that basis. We therefore reverse.

Reversed.

MACDONALD, C.J., and DONOVAN, COUNTWAY, and GOULD, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**